IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-03008-M-RJ

SCOTT DEVON HEMPHILL, )
)
        Plaintiff, )
)
v. ) ORDER
)
OFFICER BRUNO, et al., )
)
        Defendants. )

On January 11, 2023, Scott Devon Hemphill ("plaintiff"), a pretrial detainee proceeding without prepayment of fees, filed *pro se* a complaint under 42 U.S.C. § 1983. See [D.E. 1, 2, 7].

The court conducts its initial review under 28 U.S.C. § 1915A and, for the reasons discussed below, allows the complaint to proceed.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), and the court need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

### Plaintiff's Filings:

Plaintiff's verified complaint names as defendants Officers Bruno and Massenburg and Nurse Nichole Leszeck, and generally alleges violations of his Eighth and Fourteenth Amendment rights at Granville C.I. on the morning of January 18, 2022. See Compl. [D.E. 1] at 2–4; Compl. Attach. [D.E. 1-1] at 6.

Plaintiff specifically alleges, *inter alia*: he had an issue with his food tray and asked Bruno and Massenburg to have the on duty sergeant respond to his cell; Bruno refused and warned plaintiff he was in a bad mood, using expletives; plaintiff said, "don't worry about it, I'll hold the food trap and make you call him"; plaintiff contends this is DPS policy; Bruno told plaintiff, "if

2

[you] do, I'll break your [expletive deleted] hand"; Bruno left the sallyport to go feed other inmates, took a baton from Officer Durham, and said he was "going to [expletive deleted] somebody up"; when Bruno returned to pick up the food trays, plaintiff held the food trap with his hand and asked Bruno "nicely" to please call the sergeant to the sallyport; Bruno told plaintiff to remove his hand or Bruno would break it; plaintiff told Bruno that "he couldn't do so; all he can do is spray me"; Bruno asked plaintiff if he wanted to [expletive deleted] bet and "started winging [sic] wildly and 'extremely hard' in a violent rage . . . over & over until he caught [plaintiff's] hand resting on the food trap with the baton stick [sic]"; Massenburg yelled for Bruno to stop, but did not grab ahold of Bruno or block the blows with the shield Massenburg carried; Massenburg yelled for the assistance of Sergeant Greenwood, but neither officer had a walkie talkie; plaintiff was not acting violently or threateningly; plaintiff was taken to medical and given ibuprofen and bandages; plaintiff begged for the nurse to seen an outside doctor because his hand was broken, but plaintiff was informed the lead nurse or doctor would make the decision; plaintiff filled out ten sick calls about his hand pain and broken bone "to Lead Nurse Nichole Leszeck"; although he received medicine daily, plaintiff was not seen for over a month; plaintiff had to make his own finger splint using spoons and a piece of bedsheets; plaintiff was not given pain medication or follow-up treatment for broken bones; plaintiff "was told multiple times from Nurse Nichole Leszeck, 'you got what you deserved, you shouldn't have stuck your hand out & [should have] followed our officer's orders. Now wait until I find time or the doctor do [sic] to request x-rays'"; when finally seen by an outside doctor, plaintiff was diagnosed with a "clear broken finger, straight through the bone [sic]"; this doctor told plaintiff that he was lucky his finger "came out inline" because of the homemade splint; plaintiff had sleep disturbances from the finger pain; Sergeant

3

Greenwood's investigation determined that Officer Bruno "lied about [plaintiff] 'grabbing a bottle' or cup"; Officer Bruno lied on his report, saying he feared for his life and that plaintiff tried to grab him; and plaintiff's cellmate was willing to write a statement on plaintiff's behalf but plaintiff "was unable to get one by unit manager [sic]." Compl. Attach. [D.E. 1-1] at 2–5.

Plaintiff's injuries included a broken finger, swelling, extreme pain, and mental anguish. Compl. [D.E. 1] at 5. For relief, plaintiff seeks, *inter alia*, compensatory damages. Id.

In his motion for consolidation, plaintiff asserts: he "was brutally beaten by staff members" at Granville C.I. on the H-Con unit "while restrained & subdued on the ground" by two Burke County Sheriff's Deputies"; he suffered permanent hand deformities, facial injuries, hair loss due to "staff pulling out" his hair, and a broken finger; a different plaintiff in this court, "Cabin Fielder, has been victimized and suffered some of the same injuries while also subdued on the ground by multiple staff members and has a pending civil claim about the issue"; K. Cherry was brutally beaten by a Granville C.I. sergeant while in full restraints and subdued, suffering broken bones and extreme pain; Rick Ward was also beaten by the same sergeant that beat K. Cherry; "all these beatings are a systematic system that Granville [C.I.] staff allow to be conducted on H-Con unit"; the incidents all share the same excessive force allegations, satisfying the requirements of Federal Rule of Civil Procedure 42(a)(1)-(3), and "would save the court's fees and avoid unnecessary cost and delay." See Mot. [D.E. 9] at 1–2. Plaintiff seeks to "consolidate all excessive force claims at Granville C.I. H-Con unit" and appointment of counsel for all plaintiffs. Id. at 3.

Discussion:

Courts evaluate the confinement conditions of pretrial detainees under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See Kingsley v.

4

Hendrickson, 576 U.S. 389, 400 (2015). As a practical matter, however, the Due Process Clause analysis is materially indistinguishable from Eighth Amendment analysis. See Brown v. Harris, 240 F.3d 383, 388–89 (4th Cir. 2001).

Succinctly stated, plaintiff's excessive-force claim against Officer Bruno, his failure-to-protect claim against Officer Massenburg, and his deliberate-indifference claim against Nurse Nichole Leszeck are not clearly frivolous. See, e.g., Kingsley, 576 U.S. at 400–01; Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam); Farmer v. Brennan, 511 U.S. 825, 832–37 (1994); Hudson v. McMillian, 503 U.S. 1, 6–7 (1992); Whitley v. Albers, 475 U.S. 312, 319 (1986); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Brooks v. Johnson, 924 F.3d 104, 112–13 (4th Cir. 2019); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); Iko v. Shreve, 535 F.3d 225, 239–41 (4th Cir. 2008); Randall v. Prince George's Cty., Md., 302 F.3d 188, 204 (4th Cir. 2002).

The court now turns to plaintiff's motion for consolidation. See Mot. [D.E. 9]. Federal Rule of Civil Procedure 42(a) provides: "If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." District courts have "broad discretion under F.R. Civ. P. 42(a) to consolidate causes pending in the same district." A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co., 559 F.2d 928, 933 (4th Cir. 1977).

Plaintiff has not shown he is able protect other inmates' legal interests, a class action suit may not proceed without counsel, and these disparate claims by various plaintiffs against different defendants plainly do not arise out of the same "transaction or occurrence." See Myers v. Loudon Co. Pub. Sch., 418 F.3d 395, 401 (4th Cir. 2005) (finding a *pro se* plaintiff's right to litigate for himself does not create a right to litigate for others); Hummer v. Dalton, 657 F.2d 621, 625–26 (4th Cir. 1981) (finding a prisoner cannot act as a "knight-errant" for others); Inmates v. Owens,

5

561 F.2d 560, 562–63 (4th Cir. 1977) (finding a *pro se* inmate lacks standing to sue on behalf of another inmate); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam) ("Ability to protect the interests of the class depends in part on the quality of counsel . . . and we consider the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others" (internal citation omitted)); see also George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits"); Lescs v. Martinsburg Police Dep't, 138 F. App'x 562, 564 (4th Cir. 2005) (per curiam) (unpublished) (noting, "it is plain error to certify a class when a pro se litigant seeks to represent the class" (citation omitted)); Fowler v. Lee, 18 F. App'x 164, 165 (4th Cir. 2001) (per curiam) (unpublished) (noting, "this circuit does not certify a class where a pro se litigant will act as representative of that class" (citation omitted)); Ofori v. Clarke, No. 7:18-CV-00587, 2019 WL 4344289, at *3 (W.D. Va. Sept. 12, 2019) (unpublished) (noting, "practical considerations strongly militate against allowing multiple prisoner plaintiffs to jointly file and pursue a single civil action").

To the extent plaintiff instead seeks appointment of counsel, no right to counsel exists in civil cases absent "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989). "Exceptional circumstances" that contemplate appointment of counsel in *pro se* civil cases arise when a plaintiff lacks capacity to represent himself; this is a determination by the court that "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163.

This case is not complex and, because the filings indicate he is able to represent himself, plaintiff fails to show "exceptional circumstances" meriting appointment of counsel. Cf. id.

For these reasons, the court DENIES the motion to consolidate [D.E. 9].

6

Conclusion:

In sum, the court: DENIES the motion to consolidate [D.E. 9]; ALLOWS plaintiff's Fourteenth Amendment claims to proceed against the defendants, as noted above; DIRECTS the clerk to continue management of the action under Standing Order 14-SO-02; and, if service under the standing order fails, DIRECTS the United States Marshals Service to make service pursuant to 28 U.S.C. § 1915(d).

SO ORDERED this 13th day of April, 2023.

*Richard E Myers II*

RICHARD E. MYERS II
Chief United States District Judge